ORIGINAL

## REDACTED OPINION

# In the United States Court of Federal Claims

FILED

**No. 12-649C**
**Filed: June 25, 2014**
**Reissued: August 14, 2014[1]**

AUG 1 4 2014

U.S. COURT OF
FEDERAL CLAIMS

```
* * * * * * * * * * * * * * * *    *
                                   *
KATHRYN WALKER,                    *
                                   *
                    Plaintiff,     *
                                   *
        v.                         *
                                   *
UNITED STATES,                     *
                                   *
                    Defendant.     *
                                   *
* * * * * * * * * * * * * * *      *
```

**Pro Se Plaintiff; Motion to Dismiss;
Lack of Subject Matter Jurisdiction;
Statute of Limitations; Incapacitation
Pay.**

**Kathryn Walker**, Middletown, MD, pro se.

**Austin Fulk**, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C. With him were **Martin F. Hockey, Jr.**, Assistant Director, **Robert E. Kirschman, Jr.**, Director, Commercial Litigation Branch, **Stuart F. Delery**, Assistant Attorney General, Civil Division. **Captain Geoff Guska**, U.S. Army Litigation Division, Department of the Army, of counsel.

## OPINION

**HORN, J.**

Pro se plaintiff Kathryn Walker filed a complaint in the United States Court of Federal Claims alleging that she was wrongfully discharged from the United States Army Reserve on October 1, 2006, and that she was wrongfully denied incapacitation pay. Prior to when defendant responded to her complaint, Ms. Walker amended her

---

[1] This opinion was issued under seal on June 25, 2014. On June 25, 2014, the court inquired of both parties whether either party required redactions to the opinion. Defendant indicated that no redactions were required. Plaintiff failed to indicate if any redactions were required, but publicly filed a copy of the sealed opinion with her appeal to the United States Court of Appeals for the Federal Circuit.

complaint, and, thereafter, filed a second amended complaint. In her second amended complaint, Ms. Walker seeks "incapacitation pay pursuant to 37 U.S.C. § 204(g)(1) for the period from September 2003 through February 2004,[2] reinstatement in the USAR [United States Army Reserve] in the grade of major, and correction of military records to set aside her under other than honorable conditions discharge."[3] In her second amended complaint, Ms. Walker also quotes Army Regulation 135-175 ¶ 1-3a,[4] which states:

> a.  Reserve component (RC) officers will be separated only by—
>
> > (1) The Secretary of the Army (SA).
> > (2) Commanders specified in this regulation under conditions set forth in this and other pertinent regulations.
> > (3) Commanders specified in special directives of the SA under the conditions in these directives.
> > (4) In relation to paragraphs (2) and (3), above, the discharge authority delegated to commanders by this regulation will not include authority to discharge an officer under a court-martial sentence to dismissal, prior to completion of appellate review, unless the discharge authority intends the discharge to act as a remission of the conviction.

Army Reg. 135-175, ¶ 1-3a (Feb. 28, 1987).

Ms. Walker further alleges in her second amended complaint that according to "Army Regulation 135-175 ¶ 2-8a," "the Army's Headquarters, 7th Army Reserve Command lacked the authority to discharge plaintiff," and, therefore, "the plaintiff was not legally discharged on October 1, 2006 under Army Regulation 135-175." Army Regulation 135-175, ¶ 2-8a, "Discharge authority," provides, in pertinent part:

---

[2] Previously Ms. Walker had represented to the Army Board for Correction of Military Records (ABCMR) that the incapacitation pay due to her was for a period beginning on August 20, 2003 through February 2004.

[3] The plaintiff failed to keep the court appraised of her current address, so that the flow of her multiple, improperly filed motions was interrupted until the court was able to secure a correct address for plaintiff. In addition, the second amended complaint was not properly filed in accordance with the Rules of the United States Court of Federal Claims. In order to move the case forward and given plaintiff's pro se status, the court, nonetheless, filed the second amended complaint by leave of the court. Moreover, among other relief, Ms. Walker seeks attorney's fees even though she is representing herself pro se before this court.

[4] Ms. Walker incorrectly cites to Army Regulation 135-175 ¶ 1-4a in her second amended complaint, but quotes the regulation from Army Regulation 135-175 ¶ 1-3a.

> HQDA [Headquarters, Department of the Army] will take final action on
> the recommendations of boards of officers and resignation in lieu of
> involuntary separation, based on the reasons 10 through 2–14.[5] Area
> commanders will forward these cases, with the recommendations and
> remarks, to the Cdr, ARPERCEN, PAT–R.

Army Reg. 135-175, ¶ 2-8a (emphasis in original).

In response, the government filed a motion to dismiss Ms. Walker's second amended complaint, or, in the alternative, for judgment on the administrative record. Subsequently, Ms. Walker filed a cross-motion for judgment on the administrative record and a response to the government's motion to dismiss, after which the parties exchanged further responsive briefs.

### FINDINGS OF FACT

On August 3, 1989, Ms. Walker was commissioned a second lieutenant in the United States Army Reserve and assigned to the Transportation Corps. Between her commissioning and April 1, 1999, Ms. Walker served in various units in the Army Reserve and the Army National Guard. On April 1, 1999, Ms. Walker transferred from the Texas Army National Guard to the Army Reserve. On June 19, 2002, she was promoted to the rank of major in the Army Reserve.

On January 13, 2003, Ms. Walker was mobilized into active duty for one year in support of Operation Enduring Freedom. On January 21, 2003, Ms. Walker was ordered to Fort Hood, Texas. On May 30, 2003, while on active duty, Ms. Walker sought medical treatment for what Army medical personnel described as "bilateral wrist pain and hand weakness for 2 to 3 months," and was diagnosed with carpal tunnel syndrome in both hands. Ms. Walker's medical evaluation form indicated that her condition may result in temporary disability. On August 7, 2003, she was found unfit to perform her assigned duties as a training officer, and, on August 13, 2003, an informal Line of Duty Investigation conducted by Ms. Walker's commanding officer determined that she sustained her injuries in the line of duty. Thereafter, on August 14, 2003, Ms. Walker requested incapacitation pay[6] from the Army for bilateral carpal tunnel syndrome.  On

---

[5] The reasons for involuntary discharge, referenced in Army Regulation 135-175, ¶ 2-8a, include, "Substandard performance of duty," Army Reg. 135-175, ¶ 2-11, "Moral or professional dereliction," Army Reg. 135-175, ¶ 2-12, "Involuntary separation of officers who do not meet the medical fitness standards at time of appointment . . .," Army Reg. 135-175, ¶ 2-13, and "In the interest of National security," Army Reg. 135-175, ¶ 2-14.

[6] Section 204(g)(1)(A) of title 37 of the United States Code states:

> A member of a reserve component of a uniformed service is entitled to the
> pay and allowances provided by law or regulation for a member of a

3

August 18, 2003, on United States Army Reserve Command Form 46-1-R (Soldier Acknowledgement of Incapacitation Pay Counseling), Ms. Walker acknowledged her understanding of, and agreement with, the requirements for requesting incapacitation pay. On August 19, 2003, Ms. Walker completed her required service, was honorably released from active duty, and transferred back to the Army Reserve.

A September 4, 2003, Military Physician's Statement of Soldier's Incapacitation/Fitness for Duty form, United States Army Reserve Command Form 46-2-R, indicates that Ms. Walker was found unfit to perform military duties from September 4, 2003 through March 4, 2004. In a January 26, 2004 memorandum from Ms. Walker to her commanding officer, plaintiff requested incapacitation pay and allowances from March 4, 2004 through September 4, 2004, due to her bilateral carpal tunnel syndrome. Plaintiff also stated that she was unemployed, outside of her duties in the Army Reserve, and without any income from any source.

On April 1, 2004, Ms. Walker was transferred, upon her request, to the 317th Support Center, an Army Reserve unit in Germany, because her spouse, an active duty Army officer, was transferred there. On a June 10, 2004, Individual Sick Slip, Department of Defense Form 689, Ms. Walker was diagnosed with a right knee sprain sustained in the line of duty, and was restricted from running, jumping, or marching for seven days. A consult report, dated June 22, 2004, indicates that Ms. Walker was undergoing physical therapy for tricompartmental arthritis in her right knee. On July 7,

---

regular component of a uniformed service of corresponding grade and length of service whenever such member is physically disabled as the result of an injury, illness, or disease incurred or aggravated . . . in [the] line of duty while performing active duty. . . .

37 U.S.C. § 204(g)(1)(A) (2000). Army Regulation 135-381 states:

a. Section 204, title 37, United States Code provides authority for continuation of pay and allowances under certain circumstances to soldiers who are disabled ILD [in the line of duty] from injury, illness, or disease.
b. This chapter implements policy for soldiers disabled by injury, illness, or disease after 29 September 1988.
c. For the purposes of this regulation such continuation of pay and allowances is referred to as "incapacitation pay. . . .

Army Regulation 135-381, ¶ 4-1a-c (June 1, 1990) (emphasis in original). The 1990 version of Army Regulation 135-381 was in effect at the time Ms. Walker requested incapacitation pay. The specific processing procedures governing incapacitation pay were later included in the Department of the Army Pamphlet 135-381, *Incapacitation of Reserve Component Soldiers Processing Procedures* (Sept. 29, 2005), which, however, as discussed below, was not in effect at the time pertinent to plaintiff's claims.

2004, she was issued a temporary physical profile "3,"[7] Department of the Army Form 3349, for 30 days, which indicated that Ms. Walker was restricted, until August 7, 2004, from certain physical activities, namely running, jumping, and kneeling/squatting, among other things, due to knee pain and osteoarthritis. An Individual Sick Slip, Department of Defense Form 689, dated August 3, 2004, indicates that Ms. Walker's temporary restriction from certain physical activity was extended until August 30, 2004, or until she had an orthopedic consultation. On September 1, 2004, Ms. Walker was re-evaluated for her carpal tunnel syndrome by an Army medical professional, who prescribed "Motrin 800 mg" for the condition.

By the fall of 2005, Ms. Walker's Army Reserve unit commander in Germany became aware that Ms. Walker continued to receive active duty pay in the aggregate approximate amount of $55,000.00 after she had been released from her 2003 active duty mobilization. An investigation commenced by her commanding officer pursuant to Army Regulation 15-6, *Procedures for Investigating Officers and Boards of Officers* (Sept. 30, 1996) (emphasis in original), found that

> the respondent [Ms. Walker] mismanaged her personal affairs to the discredit of the service within the meaning of paragraph 2- l 2(b ), AR 13 5-175, by knowingly continuing to receive military pay to which she was not entitled. Specifically, a preponderance of the evidence shows: (a) that the respondent did not out-process Finance as ordered at the end of her mobilization in September 2003, (b) that the respondent failed to report

---

[7] As explained in <u>Watson v. United States</u>, 113 Fed. Cl. 615 (2013):

The Army's physical profile system is "a system for classifying individuals according to functional abilities." Army Reg. 40–501 ¶ 7–1. In an effort to "provide an index to overall functional capacity," individuals are assigned one of four physical profile numerical designations. *Id.* ¶ 7–3(b). For example, an individual assigned a physical profile of three "signifies that the individual has one or more medical conditions or physical defects that may require significant limitations," and that "[t]he individual should receive assignments commensurate with his or her physical capability for military duty." *Id.* ¶ 7–3(d)(3).

Individuals are also assigned either temporary or permanent physical profiles. *See id.* ¶ 7–4. Relevant here, "A temporary profile is given if the condition is considered temporary, the correction or treatment of the condition is medically advisable, and correction usually will result in a higher physical capacity." *Id.* ¶ 7–4(b).

<u>Watson v. United States</u>, 113 Fed. Cl. at 623 n.8.

continued receipt of active-duty pay from September 2003 through May 2004 after demobilization, and (c) that the respondent improperly stated the pay was incapacitation pay.

On December 3, 2005, Ms. Walker's commanding officer testified at her administrative separation proceeding that the approximately $55,000.00 she had been paid was identified during the course of the Article 15-6 investigation by a document retrieved from the "military pay and finance automated system," as having been improperly received. In addition, Ms. Walker had missed each of her Army Reserve unit's battle assemblies every month between June 2004 and June 2005. Ms. Walker also missed her unit's annual training in February 2005 and March 2005. As a result, she had received eleven letters of unsatisfactory attendance from her commanding officer for her absences.

On October 20, 2005, Ms. Walker was notified in a Notice of Elimination Proceedings that an Administrative Separation Board would convene to determine whether the Army should separate her from the Armed Services.  The Notice of Elimination Proceedings stated that Ms. Walker was required to be present at Headquarters, 7th Army Reserve Command, on December 3, 2005.  The Notice of Elimination Proceedings also contained language from Army Regulation 135-175, stating that the Administrative Separation Board would appoint counsel to represent Ms. Walker, in absentia, should she fail to appear at her proceeding.  Ms. Walker ignored additional attempts to notify her of the separation proceedings.  For example, she hung up the telephone on members of her Army Reserve unit when they called to notify her of the unit's attempt to mail her Notice of Elimination Proceedings.  When Ms. Walker's Army Reserve unit commander went to her civilian workplace and attempted to provide her with the Administrative Separation Board documents, she threatened to call the military police.

Notification of Ms. Walker's elimination proceedings also was provided to Captain Udelgarde Alexandre, a Senior Defense Counsel, who had been assigned to represent Ms. Walker.  Captain Alexandre contacted Ms. Walker and explained that she was appointed to represent Ms. Walker before the Administrative Separation Board proceeding.  In a July 29, 2006 memorandum for record, Captain Alexandre stated:

> I told her [Ms. Walker] who I was and explained that I was appointed to represent her at the Administrative Separation Board. Major Walker informed me that she was not interested in my representation and that she did not require my services.  In plain English, she said "Ma'am I'm not interested" twice and hung up the phone on me. MAJ Walker declined my representation.  I accepted Major Walker's wishes and did not represent her at the board.

On December 3, 2005, the Administrative Separation Board was convened to consider whether to separate Ms. Walker from the Army Reserve, and to determine the appropriate type of discharge. After hearing testimony, including testimony from Ms.

Walker's Army Reserve unit commander, the "Show-Cause Board *in re* MAJ Kathryn Walker" found that Ms. Walker had

> mismanaged her personal affairs to the discredit of the service within the meaning of paragraph 2-12(b), AR 135-175, by knowingly continuing to receive military pay to which she was not entitled.   Specifically, a preponderance of the evidence shows: (a) that the respondent did not out-process Finance as ordered at the end of her mobilization in September 2003, (b) that the respondent failed to report continued receipt of active-duty pay from September 2003 through May 2004 after demobilization, and (c) that respondent improperly stated the pay was incapacitation pay. . . .

> That the respondent intentionally neglected or failed to perform assigned duties within the meaning of paragraph 2-12(i)(1), AR 135-175, by missing unit battle assemblies every month between June 2004 and June 2005 and by missing unit annual training in February and March 2005. specifically [sic], a preponderance of the evidence shows: (a) that the respondent failed to report for repeated battle assemblies between June 2004 and June 2005 as evidenced by 11 letters of unsatisfactory attendance, and witnessed by her unit commander, and (b) that the respondent failed to report for mandatory annual training on 11 September 2004 and again from 26 February through 11 March 2005, as evidenced by notification letters from her unit commander. . . .

> That the respondent intentionally neglected or failed to reply to official correspondence within the meaning of paragraph 2-12(i)(3)(d), AR 135-175, by refusing to acknowledge letters from her unit and by hanging up the telephone on an officer from the unit who called to ascertain why she was not present for unit training.   Specifically, a preponderance of the evidence shows: (a) that the respondent on repeated occasions refused to accept personally delivered notifications as stated by the witnesses, (b) that the respondent on repeated occasions refused to accept delivery of and to sign for mail as evidences [sic] by written statements, (c) that the respondent's husband, an active-duty officer, connived with her in refusing delivery of and to sign for mail as evidenced by written statements, and (d) that the respondent willfully changed her mailing address from Germany to Texas with intent to deceive and in order to frustrate delivery of mail to her while she was living in Germany.

Based upon its findings, the Show-Cause Board concluded that Ms. Walker should be separated from the Army Reserve with a discharge under other than honorable conditions.   Accordingly, on October 1, 2006,[8] in a decision signed by Col.,

---

[8] The court notes that the administrative record before the court includes two different discharge orders of Ms. Walker, the first with the effective date of September 8, 2006,

GS [General Staff] Albert J. Gardner, Ms. Walker was separated from the Army Reserve with an other than honorable discharge.

Ms. Walker sought administrative review of her discharge on five separate occasions, twice before the Army Discharge Review Board (ADRB), and three times before the ABCMR. Ms. Walker first challenged her discharge before the ADRB on November 8, 2007, requesting that the ADRB upgrade her discharge characterization from "UNDER OTHER THAN HONORABLE" to "HONORABLE." (capitalization in original). On September 30, 2008, the ADRB denied Ms. Walker's request, stating that after reviewing her application, it determined Ms. Walker was "properly and equitably" discharged under other than honorable conditions. On January 8, 2009, Ms. Walker again challenged her discharge before the ADRB and repeated her request for an upgrade in characterization. On May 6, 2009, the ADRB again rejected Ms. Walker's challenge on the grounds she was "properly and equitably" discharged. The ADRB added that Ms. Walker had exhausted her appeals with the ADRB, but noted that she could still apply to the ABCMR for relief.

Ms. Walker challenged her discharge before the ABCMR on June 2, 2009, this time represented by counsel. Ms. Walker requested that her involuntary separation with a discharge under other than honorable conditions be voided, and that she be reinstated into the Army Reserve. Ms. Walker argued before the ABCMR that her discharge proceedings should be voided because she was denied due process as set forth in Army Regulation 135-175. According to Ms. Walker, an officer against whom involuntary administrative separation proceedings have been initiated should be afforded notice of the proceedings and records which are to be submitted to the Administrative Separation Board, has a right to representation by counsel, and should have an opportunity to present her case to the Administrative Separation Board. Ms. Walker further stated that she was not notified of her involuntary separation action, and that she did not execute any waiver of her rights to appear for a hearing before a Board of officers. Ms. Walker also argued that the presumption of regularity the ABCMR attributed to the Army administrative separation process was erroneous, because "the entire record is void of any facts and circumstances concerning the events that led to her discharge from the Army Reserve." On December 11, 2009, the ABCMR denied Ms. Walker's challenge. In its record of proceedings, the ABCMR stated that Ms. Walker bore the burden of proving an error or injustice by a preponderance of the evidence, but that she had failed to satisfy that burden.

---

and the second with the effective date of October 1, 2006. The discharge orders bear different numbers, were issued on different dates and list different effective dates of Ms. Walker's discharge, although both discharge orders were signed by Col., GS Albert J. Gardner, both reference the HRC's September 8, 2006 Memorandum signed by MG [Major General] Hernandez, and both note Ms. Walker's other than honorable discharge. Because plaintiff and defendant in their respective briefs agree that Ms. Walker's effective date of discharge is October 1, 2006, the court will treat Ms. Walker's effective date of discharge as October 1, 2006.

The ABCMR concluded that:

> The applicant's records do not contain the facts and circumstances concerning the events leading to her discharge from the USAR.   Her commander's notification of her separation action, her election of her rights, and the recommendations of a board of officers were not available for review. However, her discharge orders contain a reference to a memorandum from HRC [Headquarters Reserve Command], dated 8 September 2006, and signed by a major general. Therefore, it is reasonable to conclude that her separation package and recommendations by a board of officers were in fact submitted to HRC for final approval.

On April 7, 2011, the ABCMR denied a petition filed by Ms. Walker for reconsideration of its December 11, 2009 decision and concluded that she had failed to meet her burden of proof. The ABCMR stated that "the overall merits of this case are insufficient" to amend its earlier decision.   In its April 7, 2011 decision, the ABCMR noted that the evidence in the record demonstrated that Ms. Walker's administrative discharge was accomplished in accordance with the applicable regulations, with no indications of any violations of her rights.  The ABCMR also noted that Ms. Walker was afforded every opportunity to participate in her administrative separation proceedings, but had failed to do so. Furthermore, the ABCMR concluded that based on a review of Ms. Walker's separation proceedings, her discharge under other than honorable conditions properly characterized "her multiple acts of misconduct and overall service."

On May 2, 2012, Ms. Walker petitioned the ABCMR for a third time, again seeking correction of her military records to void her involuntary separation and for reinstatement into the Army Reserve.  Additionally, Ms. Walker requested evaluation of her medical status by a Medical Evaluation Board (MEB), as well as "incapacitation pay and allowances for the period from 20 August 2003 through the date of completion of her physical disability evaluation and separation from the USAR." Ms. Walker alleged in her third petition to the ABCMR that she never was fit for duty after her 2003 mobilization; that she was involuntarily discharged without simultaneous process for administrative separation and physical disability evaluation to which she claims she was entitled; that she was undergoing medical treatment at the time she was separated; that she was separated without the benefit of proper treatment and evaluation of her alleged medical condition; and that she was denied the opportunity to submit documentation of her medical condition and have a disability rating assigned, all in violation of Army Regulation 635-40.

On November 13, 2012, the ABCMR returned Ms. Walker's request without action. The ABCMR stated that according to Army Regulation 15-185, if it receives a request for reconsideration after it has already considered one request for reconsideration, the case will be returned without action. See Army Reg. 15-185, *Army Board for Correction of Military Records*, ¶ 2-15*b* (Mar. 31, 2006).  As discussed in its on April 7, 2011 decision, the ABCMR had rejected Ms. Walker's request for

reconsideration of its denial of her first request for relief.  Nonetheless, on November 27, 2012, the ABCMR issued a decision in which it stated it had decided to conduct a substantive review of Ms. Walker's third petition to determine whether the interests of justice necessitated granting her relief.  Upon evaluation of the evidence in the record, the ABCMR, once again, determined that there was no basis for granting any of Ms. Walker's requested relief. The ABCMR noted that while an August 13, 2004 Informal Line of Duty Investigation referenced an August 7, 2003 handwritten letter by Ms. Walker "Chief, Training," indicating that Ms. Walker was found to be unfit to perform her assigned duties, her August 14, 2003 request for incapacitation pay did not contain the proper documentation required for such claims to be approved.  The ABCMR noted that Department of the Army Pamphlet 135-381[9] details the procedures by which a soldier must apply for and be approved to receive incapacitation pay.  See Department of the Army Pamphlet 135-381 (Sept. 29, 2005). The ABCMR also held that "[o]n 4 September 2003, a military physician documented that the applicant was unfit to perform military duties from 4 September 2003 to 4 March 2004. However, the evidence of record fails to show the applicant provided the documentation to her commander for consideration of her request." Furthermore, the ABCMR held that Ms. Walker's request for incapacitation pay for the period from March 4, 2004 through September 4, 2004 also did not contain the required documentation.  The ABCMR concluded there was no evidence to demonstrate that Ms. Walker was excused from attending her various unit battle assemblies and annual training in 2004 and 2005. Accordingly, the ABCMR held that there was insufficient evidence to support Ms. Walker's claim that she had submitted a proper request for incapacitation pay, or that she was entitled to incapacitation pay retroactive to August 20, 2003, through the date of her separation.

---

[9] The court notes that the ABCMR incorrectly references the Department of the Army Pamphlet 135-381 as applicable to Ms. Walker's case. The Department of the Army Pamphlet 135-381 was first issued in September 2005. The procedures described therein, and, specifically, in DA PAM 135-381 ¶ 2-1, for a soldier to "[c]omplete and submit an Incapacitation Pay Monthly Claim Form (DA Form 7574 figure 2-2)) for each calendar month claimed," are, therefore, not applicable to Ms. Walker, as the alleged processing of her incapacitation claims must have taken place in the time period between August 2003 and March 2004, long before the Army Pamphlet 135-381 was in effect. The defendant concedes that the ABCMR incorrectly cited to the pamphlet, but argues it was, at most, "harmless error" because Army Regulation 135-381 already provides procedures for incapacitation pay and the "pamphlet merely provides a greater degree of specificity." The court notes, however, Army Regulation 135-381 contains only general procedures regarding the incapacitation pay process, and does not include a requirement to submit a monthly claim form. Had the court reached the merits of Ms. Walker's claim and been able to consider if the ABCMR's decision was "'arbitrary, capricious, contrary to law, or unsupported by substantial evidence,'" Meidl v. United States, 108 Fed. Cl. 570, 575 (quoting Roth v. United States, 378 F.3d 1371, 1381 (Fed. Cir.), reh'g denied (Fed. Cir. 2004)), mistakes, such as the citation to the Department of the Army Pamphlet 135-381, would have required closer scrutiny by the court.

Additionally, regarding Ms. Walker's request for an evaluation of her medical status by an MEB, the ABCMR noted that "under the laws governing the Army PDES [physical disability evaluations], in order to be eligible to receive retirement and severance pay benefits, physically unfitting disabilities must meet certain LOD [line of duty determination] criteria." See Army Reg. 635-40, *Physical Evaluation for Retention, Retirement, or Separation*, ¶ 3-4a (Sept. 1, 1990). The ABCMR concluded that there was no evidence establishing that Ms. Walker's alleged condition was directly caused by either service on active duty or in the Army Reserve. According to the ABCMR,

> the evidence of record shows the period of time the examining physician certified the applicant [Ms. Walker] was not fit to perform military duties was from 4 September 2003 to 4 March 2004. The Evidence of Record also shows the applicant [Ms. Walker] was administratively separated from the USAR more than 2 ½ years after the period that a physician documented the applicant was unable to perform military duties. Since there are no other medical records showing she was unfit to perform her military duties, it is reasonable to conclude that [Ms. Walker's] condition had improved.[10]

Accordingly, the ABCMR concluded Ms. Walker was not entitled to physical disability evaluation processing, and her claim was found to be without merit. The ABCMR also highlighted that Ms. Walker bore the burden of proving administrative impropriety in her separation by a preponderance of the evidence, and that she had failed to do so. Therefore, the ABCMR denied all of Ms. Walker's requested relief, and informed Ms. Walker that she was not eligible to request further action on her claims to the ABCMR because her request for review of her discharge had already been reconsidered. The ABCMR added, however, that Ms. Walker could seek relief in a court of appropriate jurisdiction.

Ms. Walker ultimately filed a complaint in the United States Court of Federal Claims, followed by an amended complaint, and then a second amended complaint. In this court, Ms. Walker requests incapacitation pay for the period from September 2003 through February 2004, reinstatement into the Army Reserve as a major, and correction of her military records to set aside her under other than honorable conditions discharge. In response, the government filed a motion to dismiss, or, in the alternative, for judgment on the administrative record. The government first argues that the court lacks subject matter jurisdiction to adjudicate Ms. Walker's incapacitation pay claim because it is time-barred by the statute of limitations. Second, the government argues that

---

[10] Several documents in the administrative record suggest that Ms. Walker may have suffered a knee injury in 2004, and may have continued to suffer from Carpal Tunnel Syndrome as of September 1, 2004. Nothing in the administrative record, however, demonstrates that Ms. Walker was diagnosed by a medical professional to be unfit to perform her military duties after March 4, 2004, such that she might have been entitled to incapacitation pay.

because the court lacks jurisdiction over Ms. Walker's incapacitation pay claim, the court lacks jurisdiction to adjudicate her remaining claims for reinstatement and correction of her military records because they are equitable claims, for which she cannot be awarded relief if not incident to, or collateral to, a claim for monetary relief. Third, the government argues that even if the court determines it has jurisdiction to adjudicate Ms. Walker's claims, it should limit its review to the ABCMR's November 27, 2012 decision, in which the ABCMR concluded that there was insufficient evidentiary basis to support Ms. Walker's claim that she had submitted a proper claim for incapacitation pay or that she was entitled to incapacitation pay. Fourth, the government argues that the ABCMR correctly found that Ms. Walker was properly discharged from the Army Reserve and the Board properly concluded that Ms. Walker was not entitled to incapacitation pay, because she was not entitled to simultaneous processing on medical grounds, and because of her documented misconduct. The government also contends that Ms. Walker's argument that her discharge orders did not comply with regulations is waived because she did not argue it before the ABCMR, and that her discharge was properly processed and the orders properly authenticated.

In response, Ms. Walker asserts that this court has jurisdiction to adjudicate all of her claims, including her request for incapacitation pay and her request to be reinstated into the Army Reserve. Ms. Walker also argues that she is entitled to incapacitation pay because she alleges the claim accrued on the date of her improper discharge from the Army Reserve, given that her discharge was defective because it failed to comply with applicable regulations and was not properly approved. Ms. Walker also alleges that that the ABCMR's November 27, 2012 rejections of her requests for relief were arbitrary, capricious, and contrary to law.

## DISCUSSION

Ms. Walker filed her case in this court pro se. When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, pro se plaintiffs are entitled to liberal construction of their pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9-10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320 (Fed. Cir. 2014) (citing Haines v. Kerner, 404 U.S. at 520); Diamond v. United States, 115 Fed. Cl. 516, 524 (2014). "However, '"[t]here is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his [or her] pleading.'"" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v.

United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9 and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)).

It is well established that "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." Henderson ex rel. Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011); see also Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." (citing Arbaugh v. Y & H Corp., 546 U.S. at 514)); Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1342 (Fed. Cir. 2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case." (citing Johannsen v. Pay Less Drug Stores N.W., Inc., 918 F.2d 160, 161 (Fed. Cir. 1990))); View Eng'g, Inc. v. Robotic Vision Sys., Inc., 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). "The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." Arbaugh v. Y & H Corp., 546 U.S. at 506; see also Cent. Pines Land Co., L.L.C. v. United States, 697 F.3d 1360, 1364 n.1 (Fed. Cir. 2012) ("An objection to a court's subject matter jurisdiction can be raised by any party or the court at any stage of litigation, including after trial and the entry of judgment." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506)); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1346 (Fed. Cir. 2008) ("[A]ny party may challenge, or the court may raise sua sponte, subject matter jurisdiction at any time." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506; Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); and Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998))); Pikulin v. United States, 97 Fed. Cl. 71, 76, appeal dismissed, 425 F. App'x 902 (Fed. Cir. 2011). In fact, "[s]ubject matter jurisdiction is an inquiry that this court must raise sua sponte, even where . . . neither party has raised this issue." Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1369 (Fed. Cir.) citing Textile Prods., Inc. v. Mead Corp., 134 F.3d 1481, 1485 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir.), cert. denied, 525 U.S. 826 (1998)), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. granted in part sub. nom Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc., 546 U.S. 975 (2005), cert. dismissed as improvidently granted, 548 U.S. 124 (2006).

Pursuant to the Rules of the United States Court of Federal Claims (RCFC) and the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short

and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2014); Fed. R. Civ. P. 8(a)(1), (2) (2014); see also Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57, 570 (2007)). "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, Federal Practice and Procedure § 1286 (3d ed. 2004)).

"A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir. 2014), reh'g denied (Fed. Cir. June 11, 2014). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

When deciding a case based on a lack of subject matter jurisdiction or for failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555-56 (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002)))); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982), recognized by Davis v. Scherer, 468 U.S. 183, 190, reh'g denied, 468 U.S. 1226 (1984); United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1327-28 (Fed. Cir. 2006); Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Boise Cascade Corp. v. United States, 296 F.3d 1339, 1343 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002), cert. denied, 538 U.S. 906 (2003).

The Tucker Act grants jurisdiction to this court as follows:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2012).  As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained.  See United States v. Navajo Nation, 556 U.S. 287, 289-90 (2009); United States v. Mitchell, 463 U.S. 206, 216 (1983); see also Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999).

"Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act.  The claim must be one for money damages against the United States. . . ."  United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); Smith v. United States, 709 F. 3d 1114, 1116 (Fed. Cir.), cert. denied, 134 S. Ct. 259 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343 ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States.").  In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims.  The court wrote:

The underlying monetary claims are of three types. . . .  First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . .  Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum."  Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605-06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . .  Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury."  Eastport S.S., 372 F.2d at 7.  Claims in this third category, where no payment has been

made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also Testan [v. United States], 424 U.S. [392,] 401-02 [1976] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ontario Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. at 400); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)."). "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (The absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act."); Peoples v. United States, 87 Fed. Cl. 553, 565-66 (2009).

Incapacitation Pay Claim

The government asserts that Ms. Walker's claim for incapacitation pay is barred by the statute of limitations because Ms. Walker failed to bring her incapacitation pay claim within six years of the accrual of the claim. Ms. Walker's incapacitation pay claim, if timely, would be brought pursuant to the Tucker Act's waiver of sovereign immunity, and premised on the money-mandating provisions of the Military Pay Act. See 37 U.S.C. § 204. The Military Pay Act allows reservists in the Armed Forces to receive incapacitation pay for injuries incurred in the line of duty. See id. § 204(g)(1). Although the Tucker Act waives federal sovereign immunity and grants this court jurisdiction to hear monetary claims against the government, such as claims for incapacitation pay pursuant to the Military Pay Act, this court's jurisdiction is expressly limited by 28 U.S.C.

16

§ 2501 (2012), which prescribes a six-year statute of limitations for claims arising out of the Tucker Act's waiver of sovereign immunity.

According to 28 U.S.C. § 2501:

> Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues. . . .  A petition on the claim of a person under legal disability or beyond the seas at the time the claim accrues may be filed within three years after the disability ceases.

Id. "The six-year statute of limitations set forth in section 2501 is a jurisdictional requirement for a suit in the Court of Federal Claims." John R. Sand & Gravel Co. v. United States, 457 F.3d 1345, 1354 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2006), aff'd, 552 U.S. 130 (2008); Schnell v. United States, 115 Fed. Cl. 102, 104-05 (2014). The United States Court of Appeals for the Federal Circuit has indicated that a claim accrues ""when all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money."" San Carlos Apache Tribe v. United States, 639 F.3d 1346, 1358-59 (Fed. Cir.) (quoting Samish Indian Nation v. United States, 419 F.3d 1355, 1369 (Fed. Cir. 2005) (quoting Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003), cert. denied, 540 U.S. 1177 (2004))), reh'g en banc denied (Fed. Cir. 2011); see also FloorPro, Inc. v. United States, 680 F.3d 1377, 1381 (Fed. Cir. 2012); Martinez v. United States, 333 F.3d at 1303) ("A cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" (quoting Nager Elec. Co. v. United States, 177 Ct. Cl. 234, 240, 368 F.2d 847, 851 (1966), motion denied, 184 Ct. Cl. 390, 396 F.2d 977 (1968)); Mildenberger v. United States, 643 F.3d 938, 944-45 (Fed. Cir. 2011); Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed. Cir. 1988); see also Eden Isle Marina, Inc. v. United States, 113 Fed. Cl. 372, 481 (2013); Brizuela v. United States, 103 Fed. Cl. 635, 639, aff'd, 492 F. App'x 97 (Fed. Cir. 2012), cert. denied, 133 S. Ct. 1645 (2013); see also Levy v. United States, 83 Fed. Cl. 67, 73, 79 (2008) (dismissing a claim for military reserve retirement benefits because suits against the United States are subject to a six-year statute of limitations and the claim was filed outside the allotted timeframe); Barney v. United States, 57 Fed. Cl. 76, 83, 86 (2003) (dismissing former Airman's claims for wrongful discharge/unpaid wages and disability retirement because they were time-barred by the six-year statute of limitations). A Judge of the United States Court of Federal Claims has noted that:

> It is well-established that a claim accrues under section 2501 "when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc), cert. denied, 540 U.S. 1177 (2004) (quoting Nager Elec. Co. v. United States, 368 F.2d 847, 851 (Ct. Cl. 1966)); see also Samish [Indian Nation v. United States], 419 F.3d [1355,] 1369 [(2005)]. Because, as noted, this

requirement is jurisdictional, plaintiff bears the burden of demonstrating that its claims were timely. See Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998); Entines v. United States, 39 Fed. Cl. 673, 678 (1997), aff'd, 185 F.3d 881 (Fed. Cir.), cert. denied, 526 U.S. 1117 (1999); see also John R. Sand & Gravel Co. v. United States, 457 F.3d 1345, 1362 (Fed. Cir. 2006) (Newman, J., dissenting); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).

Parkwood Assocs. Ltd. P'ship v. United States, 97 Fed. Cl. 809, 813-14 (2011), aff'd, 465 F. App'x 952 (Fed. Cir. 2012); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 209 (2011) (citing Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998)). Accrual of a claim is "'determined under an objective standard'" and plaintiff does not have to possess actual knowledge of all the relevant facts in order for a cause of action to accrue. FloorPro, Inc. v. United States, 680 F.3d at 1381 (quoting Fallini v. United States, 56 F.3d 1378, 1380 (Fed. Cir. 1995), cert. denied, 517 U.S. 1243 (1996)).

In her claim, Ms. Walker tries to conflate her incapacitation pay claim and wrongful discharge claim, but she does not make a claim for back pay due to wrongful discharge. Moreover, as correctly noted by defendant, "her Tucker Act claim is not for wrongful discharge, but rather for non-payment of incapacitation pay." Regarding incapacitation pay, Army  Regulation 135-381, ¶ 4-1*k* instructs that "[t]here is no automatic entitlement to incapacitation pay. Each request is judged on a case-by-case basis and is based on a soldier's inability to perform normal military duties or demonstrated loss of nonmilitary income." Id. "A prerequisite for entitlement to incapacitation pay is a completed, favorable LD [line of duty] investigation of injury, illness, or disease. However, a finding of ILD [in the line of duty] alone does not provide automatic entitlement to pay." Id., ¶ 4-1*d*. "Prerequisites for entitlement to incapacitation pay are inability to perform normal military duties or satisfactory demonstration of loss of nonmilitary earned income." Id., ¶ 4-1*e*. To receive incapacitation pay, the

[o]ther requirements of law that must be met include—

(1) Inability to perform normal military duties or demonstrated loss of nonmilitary income.
(2) A finding that the soldier was disabled "while so employed."
(3) The injury, illness, or disease was incurred or aggravated while in a duty or travel status.
(4) Eligibility to receive incapacitation pay.

Id., ¶ 4-1*d*(1)-(4).

Army Regulation 135-381 also lists the documents to be considered by the Incapacitation Review Board for every request for incapacitation pay, including a line of duty investigation report, together with a final determination; a medical evaluation; medical records; memorandum authorizing medical treatment; commander's statement; documentation to support loss of non-military compensation, if applicable; statements

and documentation submitted by the requesting solider; and a U.S. Army Accident Investigation Report. See Army Reg. 135-381, ¶ 5-5a (1)-(8). Other documents, such as the requesting soldier's training schedule, record of incapacitation payments, and entitlement verification memorandum, may be considered by the Board, as appropriate. See Army Reg. 135-381, ¶ 5-5b (1), (5)-(6).[11]

The government argues that because Ms. Walker invokes the Military Pay Act as the money-mandating statute to support her claim that she was wrongfully denied incapacitation pay from September 2003 through February 2004, her claim filed on September 27, 2012 in this court is untimely. The government contends that, "a claim for money damages arising under the incapacitation pay provisions of the Military Pay Act would accrue on the date that the application was approved," and argues that, "[c]onsequently, Ms. Walker's alleged claims for incapacitation pay were fixed, known and claims that were due and payable upon the end of each month that she submitted an application that was approved, but did not receive such payments."

Plaintiff acknowledges that according to the "date of discharge" rule established by the United States Court of Appeals for the Federal Circuit in Martinez v. United States, improper military discharge claims are subject to the six-year statute of limitations, pursuant to 28 U.S.C. § 2501. See Martinez v. United States, 333 F.3d at 1314. Ms. Walker argues, however, that her claim for incapacitation pay is not barred by the statute of limitations because the government mischaracterized her claim as one of a reservist on active duty, and that she was in fact a part-time reservist, not on active duty. Ms. Walker also argues that the applicable start date for the accrual of the statute of limitations regarding her claim should be the date of her discharge from the Army Reserve, October 1, 2006. Therefore, according to plaintiff, she had until October 1,

---

[11] The administrative record before the court does not include any evidence that an Incapacitation Review Board was convened to review Ms. Walker's alleged incapacitation pay claim. Defendant states that "there is no indication that Ms. Walker actually applied for incapacitation pay," because Ms. Walker cannot establish an entitlement to incapacitation pay solely on the presentation of some documents. Approval of incapacitation pay starts with review by either a unit commander or Incapacitation Review Board to determine whether or not such claims are meritorious. The ABCMR decision noted that "[o]n 14 August 2003, the applicant submitted a request for incapacitation pay. However, based on the evidence of record, her request did not contain the required documentation (i.e., physician's statement, DA Form 7574, or disclosure of income from nonmilitary earned income)." Moreover, Army Regulation 135-381, ¶ 4-1k, provides "[t]here is no automatic entitlement to incapacitation pay. Each request is judged on a case-by-case basis and is based on a soldier's inability to perform normal military duties or demonstrated loss of nonmilitary income." Army Reg. 135-381, ¶ 4-1k. The record before the ABCMR did not reflect that Ms. Walker's unit commander certified any incapacitation pay claim. Even if plaintiff's claims were to be considered timely by this court, which, as determined below, they are not, it is not clear that Ms. Walker could demonstrate entitlement to incapacitation pay on the merits.

2012 to file her claim in this court, for which reason she alleges her complaint, filed on September 27, 2012, was timely filed.

Ms. Walker improperly attempts to extrapolate a blanket rule from the <u>Martinez</u> case that not only claims for back pay, but other claims as well, such as her claim for incapacitation pay, do not accrue until the date of discharge. In <u>Martinez</u>, the Federal Circuit stated the limitations period was determined by the date of accrual in the back pay case brought by plaintiff, which was the date on which the service member was denied the pay to which he claimed entitlement. <u>See id.</u>

By contrast, Ms. Walker's incapacitation pay claims would have accrued when all the events occurred which were necessary to enable the plaintiff to bring suit, the date of non-payment. On August 14, 2003, Ms. Walker submitted a request for incapacitation pay, and on August 18, 2003, Ms. Walker acknowledged her understanding of, and agreement with, the requirements for requesting incapacitation pay. Ms. Walker was examined by an Army medical professional and found unfit for her military duty for the period from September 4, 2003 through March 4, 2004.[12] Ms. Walker now alleges in this court that she is due "incapacitation pay pursuant to 37 U.S.C. § 204(g)(1) for the period from September 2003 through February 2004." If, as Ms. Walker alleges, she was due incapacitation pay, she would have had to not only file a request for such pay, but also have received an approval of the incapacitation pay. Given plaintiff's stated timeframe for claiming incapacitation pay, even assuming payment a month after a submitted request, at the latest, on April 1, 2004, she should have realized that the alleged incapacitation pay monies had failed to arrive. Therefore, when Ms. Walker became aware, or should have become aware, that she did not receive the incapacitation pay she thought she was due, is when her cause of action for unpaid incapacitation pay began to accrue, and the statute of limitations began to run. In plaintiff's case, it would appear, at the latest, April 1, 2004 was the date Ms. Walker should have become aware, that she did not receive incapacitation pay. As such, pursuant to 28 U.S.C. § 2501, Ms. Walker had six years from April 1, 2004 to bring her claim before this court. Instead, Ms. Walker filed her claim on September 27, 2012, well over two years after the expiration of the six-year statute of limitations.

Although not addressed by either plaintiff or defendant, even if Ms. Walker were to have alleged she believed that the approximately $55,000.00 in active duty pay she received from September 2003 through May 2004 was, in fact, the incapacitation pay she claims to have requested, once the payments ceased, she would have realized, or she should have realized, that the further incapacitation pay monies had failed to arrive in June 2004. As a result, under even the most generous interpretation of facts, and not alleged by Ms. Walker, the statute of limitations for Ms. Walker's incapacitation pay would have begun to run on July 1, 2004. Therefore, pursuant to 28 U.S.C. § 2501, Ms. Walker was required to file her claim before the July 1, 2010, but, as indicated above, Ms. Walker filed her claim on September 27, 2012

---

[12] The court notes that, in her cross-motion for judgment on the administrative record, Ms. Walker claims that she first requested incapacitation pay on June 13, 2003.

While neither Ms. Walker nor the government cite to Joseph v. United States, a 2004 decision from this court, it is a post-Martinez opinion which applies the Martinez precedent in an incapacitation pay claim context. See Joseph v. United States, 62 Fed. Cl. 415 (2004). In Joseph, a pro se former United States Marine Corps reservist brought suit seeking incapacitation pay, as well as correction of his military records. See id. Mr. Joseph was injured on February 2, 1990, while traveling to drill with his Marine Corps Reserve unit. See id. On October 25, 1995, the Board for Correction of Naval Records (BCNR) determined that Mr. Joseph's personnel record should be corrected to show that he was entitled to incapacitation pay for the period from February 2, 1990, through May 12, 1992, and for the period from November 13, 1992, through December 21, 1992. See id. at 416. Mr. Joseph received the incapacitation pay and was honorably discharged on May 29, 1996. See id. As noted by the court, "[o]n March 17, 1997, approximately ten months after his discharge, [Mr. Joseph] again petitioned the BCNR, asking it to correct his records to reflect that he was entitled to receive incapacitation pay from December 21, 1992, through the date of his discharge on March 29, 1996, and to allow him to medically retire." Id. The BCNR in Joseph denied his claim. Mr. Joseph filed his incapacitation pay claim in this court on March 3, 2004. See id. at 416-17. After the government moved to dismiss Mr. Joseph's incapacitation pay claim, the court held that his claim was barred by the applicable six-year statute of limitations. See id. at 417. The court found that Mr. Joseph's incapacitation pay claim had accrued before he was discharged, as is the case regarding Ms. Walker. See id.

Additionally, although, again, not cited by either party, Fuentes v. United States, 100 Fed. Cl. 85 (2011), also speaks to incapacitation pay. In Fuentes, a pro se former member of an Indiana Army National Guard filed a complaint alleging he was entitled to incapacitation pay in the form of back pay because the United States Army had improperly separated him from active duty while he was injured. Although in Fuentes the plaintiff and the government disagreed as to whether plaintiff's claim was a back pay claim, as alleged by plaintiff, or a disability retirement claim, as argued by defendant, which would not have accrued until a military board had acted on the disability claim, the court concluded that the plaintiff had "established all the jurisdictional predicates for a claim for back pay under the Military Pay Act." Id. at 92. Unlike in Ms. Walker's case, however, the Fuentes plaintiff argued that he was "entitled to back pay because the Army wrongfully separated him from active duty while he was injured, and had the Army properly processed him, he would have remained on active duty for continued treatment or until a MEB acted on his case," citing to 37 U.S.C. § 204(g)(1). See Fuentes v. United States, 100 Fed. Cl. at 90. As discussed below, Ms. Walker was not on active duty at the time of her separation.

In the alternative, Ms. Walker points to her discharge from the reserve component as the start date for the limitations period, based on the Servicemembers Civil Relief Act. See Soldiers' and Sailors' Civil Relief Act of 1940, § 205, Ch. 888, 54 Stat. 1178, 1181, as amended Dec. 19, 2003, Servicemembers Civil Relief Act, Pub. L. 108-189, § 206, 117 Stat. 2835, 2844 (2003) (codified at 50 U.S.C. App. § 526(a)). The

Servicemembers Civil Relief Act tolls an applicable statute of limitations for a member of the Armed Forces while serving on active duty, and states, in relevant part:

> The period of a servicemember's military service may not be included in computing any period limited by law, regulation, or order for the bringing of any action or proceeding in a court, or in any board, bureau, commission, department, or other agency of a State (or political subdivision of a State) or the United States by or against the servicemember or the servicemember's heirs, executors, administrators, or assigns.

50 App. U.S.C. § 526.

The provision of the Servicemembers Civil Relief Act providing that the statute of limitations does not begin to run until the date of discharge would be applicable to Ms. Walker's case only if Ms. Walker was on active duty at the time of her discharge. This tolling provision is inapplicable to Ms. Walker's claim because her last period of active duty ended on August 19, 2003. See 50 App. U.S.C. § 526; see also Freeman v. United States, 98 Fed. Cl. 360, 371-72 (2011). "Military service" is defined by 50 App. U.S.C. § 511 as "active duty," which is defined in 10 U.S.C. § 101(d). Section 101(d) of Title 10 of the United States Code defines "active duty" as "full-time duty in the active military service of the United States." 10 U.S.C. § 101(d). Ms. Walker's records before the court do not reflect any active duty service after she was released from her active duty mobilization on August 19, 2003. Moreover, even though "military service," as defined in the Servicemembers Civil Relief Act, includes the limited time required for reserve component annual training duty, see id., Ms. Walker did not perform her Army Reserve duties even after the period during which she was found medically unfit for her reserve duty ended. Specifically, the administrative record reflects that Ms. Walker failed to attend her annual required training in 2004 and 2005, and missed every one of her Army Reserve unit battle assemblies from June 2004 to June 2005. Consequently, Ms. Walker did not serve time on active duty after the end of her mobilization on August 19, 2003 through when she was discharged on October 1, 2006. The tolling provisions of the Servicemembers Civil Relief Act, therefore, are not applicable to plaintiff's claims.

In addition, the statute of limitations was not tolled when Ms. Walker sought review of her case by either the ADRB or the ABCMR. Because resort to a correction board is not mandatory in military pay cases, but rather permissive, application to a correction board is not required before challenging a wrongful discharge in the United States Court of Federal Claims, and the statute of limitations is not suspended. See Chambers v. United States, 417 F.3d 1218, 1224 (Fed. Cir.), cert. denied, 546 U.S. 1066 (2005); see also See Martinez v. United States, 333 F.3d at 1304; White v. United States, 101 Fed. Cl. 673, 677 (2011) ("Plaintiff stopped receiving active duty pay when he was discharged from the Navy on November 22, 1988. Consequently, Plaintiff's claim for back pay arose on that date, and his subsequent invocation of administrative procedures did not stop the 6 year statute of limitations from running. Nor did the BCNR's denial of Plaintiff's request to correct his military records create a second cause of action."). Accordingly, the six-year statute of limitations set forth in 28 U.S.C. § 2501

was running throughout the period in which Ms. Walker sought administrative review before the ADRB and ABCMR. See Martinez v. United States, 333 F.3d at 1304.

In sum, Ms. Walker's incapacitation pay claims accrued by April 1, 2004, or at the latest, July 1, 2004. Based on the six-year statute of limitations, Ms. Walker was required to file her claim by April 1, 2010, or at best by July 1, 2010, however, she filed her claim more than two years later, on September 27, 2012. Accordingly, Ms. Walker's incapacitation pay claims are time-barred by the statute of limitations, and this court lacks subject matter jurisdiction to address her complaint.

Claims for Reinstatement and Correction of Military Records

The government also argues, citing Reilly v. United States, 93 Fed. Cl. 643, 650 (2010), that Ms. Walker's remaining claims for reinstatement into the Army Reserve in a part-time reserve status in the grade of major retroactive to October 1, 2006, and for correction of her military record to void orders reflecting her allegedly wrongful discharge from the Army Reserve are outside the jurisdiction of this court because they are separate from her incapacitation pay claims and are equitable claims that are neither incident of nor collateral to a claim for monetary relief. See James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998), reh'g denied (Fed. Cir. 1999). The government states that while this court could have reviewed possible procedural violations in processing a military service member, it may do so only to provide an entire remedy and to afford complete relief attendant to a jurisdictionally valid claim for entitlement to a monetary judgment.  According to the defendant, absent a valid claim for monetary relief, which this plaintiff does not have, given that her incapacitation pay claims are time-barred, this court lacks jurisdiction to modify Ms. Walker's service records, set aside her involuntary discharge, or order her reinstatement. See Reilly v. United States, 93 Fed. Cl. at 650.

Ms. Walker argues in response that her remaining claims are not outside the jurisdiction of the court.  Ms. Walker claims that because this court has jurisdiction over her incapacitation pay claim and wrongful discharge claim, this court has jurisdiction to hear her ancillary equitable claims as well, and those claims should not be dismissed. According to Ms. Walker, in order to properly invoke this court's jurisdiction, a plaintiff must only identity a separate source of substantive law that creates the right to money damages. She adds that she seeks incapacitation pay and ancillary equitable relief pursuant to the Military Pay Act, which she asserts is the money-mandating statute applicable to injured reservists. Ms. Walker, however, does not address this court's jurisdiction absent the validity of jurisdiction in the court for the incapacitation pay claims.

Ms. Walker seeks the court declare that plaintiff is entitled to reinstatement and to have various military records voided and/or corrected.  The United States Court of Federal Claims, however, has limited jurisdiction to grant declaratory relief, absent a claim for monetary damages.  The United States Court of Appeals for the Federal Circuit stated, as follows:

The Court of Federal Claims has never been granted general authority to issue declaratory judgments, and to hold that the Court of Federal Claims may issue a declaratory judgment in this case, unrelated to any money claim pending before it, would effectively override Congress's decision not to make the Declaratory Judgment Act applicable to the Court of Federal Claims.

Nat'l Air Traffic Controllers Ass'n v. United States, 160 F.3d 714, 716-17 (Fed. Cir. 1998); see also United States v. Tohono O'Odham Nation, 131 S. Ct. 1723, 1729 (2011) (The United States Court of Federal Claims "has no general power to provide equitable relief against the Government or its officers."); Massie v. United States, 226 F.3d 1318, 1321 (Fed. Cir. 2000) ("Except in strictly limited circumstances, see 28 U.S.C. § 1491(b)(2), there is no provision in the Tucker Act authorizing the Court of Federal Claims to order equitable relief." (citing United States v. King, 395 U.S. 1, 4 (1969) ("cases seeking relief other than money damages from the court of claims have never been 'within its jurisdiction'") and Placeway Constr. Corp. v. United States, 920 F.2d 903, 906 (Fed. Cir. 1990))); James v. Caldera, 159 F.3d at 580 ("[T]he Court of Federal Claims has no power 'to grant affirmative non-monetary relief unless it is tied and subordinate to a money judgment.'" (quoting Austin v. United States, 206 Ct. Cl. 719, 723, cert. denied, 423 U.S. 911 (1975)); Westlands Water Dist. v. United States, 109 Fed. Cl. 177, 192 (2013); Halim v. United States, 106 Fed. Cl. 677, 685 (2012); Smalls v. United States, 87 Fed. Cl. 300, 307 (2009); Pryor v. United States, 85 Fed. Cl. 97, 103 (2008) ("Apart from ordering relief under 28 U.S.C. §§ 1491(a)(2) or (b)(2), the Court of Federal Claims has no power to grant a declaratory judgment. . . . The Court of Federal Claims cannot adjudicate a complaint that seeks only declaratory relief." (citing Nat'l Air Traffic Controllers Ass'n v. United States, 160 F.3d at 717)). None of the exceptions which permit the United States Court of Federal Claims to grant declaratory relief apply to plaintiff. This court, therefore, does not have jurisdiction to grant plaintiff the declaratory relief that he requests. In cases arising under the Military Pay Act, the court only has the power to grant equitable relief "'incidental of and collateral to its award of a money judgment.'" See Martinez v. United States, 77 Fed. Cl. 318, 322 (2007) (quoting Voge v. United States, 844 F.2d 776, 781 (Fed. Cir.), cert. denied, 488 U.S. 941 (1988)), aff'd, 260 F. App'x 298 (Fed. Cir. 2008); Hwang v. United States, 94 Fed. Cl. 259, 270 (2010), aff'd, 405 F. App'x 348 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2011). The government further points out that Ms. Walker "has no cognizable monetary claim stemming from any potential wrongful discharge. This is because 37 U.S.C. § 206(g)(1),[13] governing pay for part-time non-active duty

---

[13] The statute at 37 U.S.C. § 206, effective January 28, 2008, governs pay for part-time non-active duty reservists, but that section does not contain a subsection (g)(1). It appears that the statute defendant may have intended to cite was 37 U.S.C. § 206(a)(1), governing pay for members "of a reserve component of a uniformed service," who are entitled to pay only "for each regular period of instruction, or period of appropriate duty" actually performed. 37 U.S.C. § 206(a)(1); see also Palmer v. United States, 168 F.3d at 1314.

reservists, is not money mandating." (citations omitted). "The consequence of this difference in pay entitlement between full-time active duty personnel and those serving part-time reserve duty is that a member who is serving in part-time reserve duty in a pay billet, or was wrongfully removed from one, has no lawful pay claim against the United States for unattended drills or unperformed training duty." Palmer v. United States, 168 F.3d at 1314. Consequently, because Ms. Walker was separated as a non-active duty reservist, she cannot allege a money-mandating statute that would vest this court with jurisdiction to entertain a wrongful discharge claim.

Once Ms. Walker's incapacitation pay claim was found beyond the jurisdiction of the court based on the statute of limitations, plaintiff is left without a money mandating statute or regulation on which to base her remaining claims, and absent such a money mandating, statutory basis, Ms. Walker cannot assert her equitable relief based claims in this court. As noted, this court cannot grant equitable relief unless incident or collateral to a monetary judgment. See 28 U.S.C. § 1491(a)(2); Reeves v. United States, 49 Fed. Cl. 560, 569-70 (2001); Brown v. United States, 3 Cl. Ct. 31 (1983), aff'd, 741 F.2d 1374 (Fed. Cir. 1984).

### CONCLUSION

As discussed above, plaintiff's incapacitation pay claims are time-barred by the statute of limitations, and, thus, this court lacks subject matter jurisdiction to consider the claims plaintiff raised in her second amended complaint. Therefore, defendant's motion to dismiss is **GRANTED**. Plaintiff's second amended complaint is **DISMISSED**. The Clerk of the Court shall enter **JUDGMENT** in favor of the defendant consistent with this opinion.

**IT IS SO ORDERED**.

**MARIAN BLANK HORN**
**Judge**